## AIKEN vs. MARINE BANK.

An indorsement of a promissory note, payable to a bank, made by its president as follows: "Pay to the order of A. J. A., Marine Bank by J. S. H. Pres't," is binding on the bank.

A notice of protest of a note, payable at the banking office of a bank and indorsed by it, addressed to J. S. H., Pres't, describing the note by its amount, date, time of payment and name of the maker, and stating that the note has been dishonored and the holder looks to *you* for payment, left at the banking office of such bank in due time, is sufficient to charge it as such indorser.

A notice of protest is sufficient, if it conveys the necessary information, and mistakes of description and inaccuracies do not vitiate it, if the person to be notified could not have been misled by it.

Where a note payable at the banking office of a bank, is indorsed by it, and it is presented there at maturity, and payment demanded of the proper agent of the bank which is refused; whether a formal notice of protest to the bank is necessary in order to charge it as such indorser, *Quære*.

APPEAL from the Circuit Court for *Milwaukee* County.

Action against *The Marine Bank of Milwaukee* as indorser of a promissory note, made by Jacob Hoover payable to the said bank or order, at its banking office in Milwaukee. The manner in which the indorsement was made is stated in the opinion of the court, and it was alleged in defense that the indorsement was not so made as to bind it under the general banking law of the state, and that the holder had not taken the necessary steps to charge the bank as indorser. It was proved at the trial, that John S. Harris at the time the indorsement was

made was, and thereafter continued to be the president of the defendant; and also by the said Harris, that he indorsed the note and delivered it to the plaintiff, and that he was in the city when it matured; that the defendant never had any other note of Hoover's of the amount or date of the note in question, and that he had never held any of Hoover's notes. The plaintiff then offered in evidence a notarial certificate of protest of the note, in the usual form, stating among other things, that on the day when the note was due, the notary presented it at the *Marine Bank* and demanded payment which was refused, and that he gave notice of protest by leaving such notice at the *Marine Bank.* The notice was offered in evidence, and it described the note and was directed as follows: "To John S..Harris, Pres't," but it did not state when or where the note was presented,. The plaintiff offered to prove in connection with said certificate and notice, that it was the universal custom of bankers all through the country, in corresponding with any other bank about the business of such bank, to address the president or cashier of such bank, by the name of such president or cashier, adding his title as officer of the bank, and not to address the bank by name, and that this custom was known to the defendant, and was the usage of the defendant; but to the admissibility of such certificate and notice, and the evidence so offered, the said defendant objected and the circuit judge decided that neither said certificate, notice or said testimony so offered were admissible as testimony, and excluded the same. Judgment was rendered for the defendant from which the plaintiff appealed.

*E. Mariner,* for appellant:

1. The endorsement was clearly obligatory on the defendant. *Rockwell vs. Elkhorn Bank,* 13 Wis., 653; 5 Smith, 152; 4 Hill, 442. 2. The court erred in excluding the certificate of protest and notice. The notice was sufficient. 4 Paige, 125; 12 Barb., 245; 1 Coms., 413; 8 Wend., 297; 9 Peters, 33; 11 Wheat., 431. No notice was necessary to be proven.

Chitty on Bills, 153, 437; *Sharp vs. Bailey*, 9 Barn. & Cress., 44.

*Butler, Buttrick & Cottrill*, for respondent :

1. The notice of protest offered in evidence was rightly re jected, because it was not directed to the bank, but to "John S. Harris, Prest." It does not state when or where the presentment was made, nor that the holder looked to the bank for payment, but states that "the holder looks to *you*" (John S. Harris). It does not state that the bank, or Harris, was an indorser of the note. It was a notice to John S. Harris, an individual, the word "Prest." being mere surplusage. *Baker vs. Mech's Fire Ins. Co.*, 3 Wend., 94; *Eaton vs. Bell*, 5 Barn. & Ad., 34; *Pentz vs. Stanton*, 10 Wend., 271 ; *Hatcher vs. Dinsmore*, 6 Mass., 300; *Wyman vs. Alden*, 4 Denio, 163 ; Story on Prom. Notes, §§ 135, 139; *Smith vs. Hill*, 6 Wis., 154. 2. The intent of chap. 12, sec. 5, R. S., is, that unless due notice is given to every indorser, no recovery can be had. 3. The certificate of the notary does not show service of the notice as required by the statute. R. S., chap. 12, § 5. 4. The indorsement sued on was the contract of the president alone and not of the president and cashier as required by § 7, chap. 71, R. S., and no recovery can be had on it against the bank.

*By the Court*, PAINE, J. This action was brought against the bank as indorser. The indorsement was a follows : "Pay to the order of *Albert J. Aiken*, Marine Bank, by John S. Harris, Prest." It is claimed that this is not a valid endorsement, and that the decisions of this court in *Rockwell vs. Elkhorn Bank* 13 Wis,653, *Ballston Spa Bank vs. Marine Bank, ante*, 120, do not extend to an indorsement, but only to the making of a note. But we think an endorsement is as fully within the reasoning and principles of those decisions, and of the cases on which they rely, as is the making of a note.

The court below erred in rejecting the certificate of the notary. The bill of exceptions does not state upon what ground it was rejected. But the argument here would indicate, that

it must have been for the reason that the notice was addressed to "John S. Harris, Prest." It is urged that this was not a good notice to charge the bank, and reliance is placed upon a class of cases which have held that contracts signed by officers in that way, were their individual contracts, and not the contracts of the corporations whose officers they were. But some of these cases go upon the ground that although the intention evidently was to bind the corporation, yet that no sufficient language being used for the purpose, the officers were bound, upon the rule that where an agent fails to bind his principal he binds himself. They rely also upon the fact, which is generally true in those cases, that although the officers sign in their official capacity, still the language in the body of the instrument amounts only to a personal promise by them. And while there is a conflict upon the question, it is unnecessary to examine the cases, for the reason that those which hold to the rule referred to, are wholly inapplicable to a mere notice.

It is well settled that a notice is sufficient if it conveys the necessary information. Mistakes of description or inaccuracies, do not vitiate it, if the person notified could not have been misled. It was proved that the bank had no other note of Hoover's of the amount or date of this note. It was proved by Harris that he never had any notes of Hoover's himself. The certificate showed that the notice of protest was left at the bank, addressed to "John S. Harris, Prest." No one can doubt for a moment that he understood this notice to have been given to him as president of the bank, for the purpose of charging the bank as indorser. And if he knew it, if it was impossible to place any other rational construction upon the notice, it was sufficient. If the holder had given the notice himself, it need not have been in writing. Suppose he had gone to the bank and called for the president. He tells the president that the note had been dishonored, describing it accurately, and that he looked to him for payment. The president knew that the bank had indorsed the note, he signing as

president. He knew that he was not liable on it personally, as indorser, and that all this was known to the holder. Could he then, on a notice like the above, have a moment's doubt as to what was its meaning, or that it was intended to notify him in his official capacity, of the dishonor of the note in order to charge the bank as indorser? He certainly could not, and he could have just as little when such a notice was given in writing by a notary.

Assuming that a notice was necessary, we think, therefore, the one offered to be shown was entirely sufficient. But it may well be doubted, whether any notice was necessary. This note was payable at the *Marine Bank*. It was presented there by the notary, and he was informed by the proper agent of the bank that it would not be paid. Was it then necessary for him to turn round and formally notify the bank that it was not paid? There would seem to be no reason for it, so far as the mere knowledge of the dishonor was concerned. But if the endorser, knowing the dishonor has a right to assume that the holder waives all right as against him, unless he notifies him that he looks to him for payment, this part of the notice might still be necessary. Upon this point we decide nothing, having already held the notice offered to be shown fully sufficient.

The judgment is reversed with costs, and a new trial ordered.